The STATE of Texas, Appellant,

v.

William L. TEER et ux., Appellees.

No. 5599.

Court of Civil Appeals of Texas, Waco.

Oct. 7, 1976.

Rehearing Denied Oct. 28, 1976.

Gordon H. Rowe, Jr., Gardere, Porter & DeHay, Dallas, Joe D. Jarrard, Jr., Austin, for appellant.

L. L. Geren, Groesbeck, McClintock, Herring & Youts, Waco, for appellees.

## OPINION

JAMES, Justice.

This is a suit for personal injuries growing out of a car-truck collision. After jury verdict the trial court entered judgment in favor of Plaintiffs William L. Teer and wife Helen Joyce Teer against the Defendant State of Texas for $75,853.94 and costs, from which the State appeals. We affirm.

The Teers brought this suit against the State of Texas under the Tort Claims Act, Article 6252–19, Vernon's Annotated Civil Statutes, for personal injuries sustained by Mrs. Teer growing out of a collision of the car she was driving, with a State Highway Department dump truck driven by one Clauzell Cox. As a result of the accident Mrs. Teer sustained severe injuries to her entire body, suffering a broken jaw, a ruptured spleen, bone fractures, and dental and head injuries. Plaintiffs alleged that the dump truck was backed from the right hand side of the road onto the highway so as to obstruct that portion thereof along which Mrs. Teer was travelling.

Trial was to a jury, which found:

(1) Clauzell Cox (the driver of the dump truck) failed to keep a proper lookout, (2) which was a proximate cause of the collision; (3) that Cox backed his vehicle when such movement could not be made with safety and without interfering with other traffic, (3A) which was negligence and (4) a proximate cause of the collision; (8) that

Mrs. Teer failed to keep a proper lookout, (9) which was a proximate cause of the collision; (16) that Mrs. Teer failed to properly apply her brakes, (17) which was a proximate cause of the collision; (20) that the Teers suffered the following damages, to wit, (a) $40,000.00 for past pain and suffering, (b) $30,000.00 for future pain and suffering; (c) zero for the value of Mrs. Teer's past household services, (d) $15,000.00 for value of the future loss of Mrs. Teer's household services, (e) $7817.43 for past hospital and medical care, and (f) $2000.00 for future medical care. The jury further found in answer to special issue no. 21 that Clauzell Cox was 80% negligent and that Mrs. Teer was 20% negligent.

Pursuant to and in harmony with the jury verdict the trial court entered judgment that the Plaintiffs Teer recover $75,853.94 and costs against the State of Texas, from which the State appeals. We overrule all of Defendant's points and contentions and affirm the trial court's judgment.

Appellant's first point asserts the trial court erred in "refusing to properly instruct the jury in response to its note" sent to the court while the jury was deliberating. After the presentation of the evidence had been concluded and the jury was deliberating, the jury sent a written note to the court in the following language:

"Your honor: On Issue No. 3, do you mean Mr. Cox backed the truck in gear or involuntary rolling? Are in gear and involuntary rolling synonymous terms? Respectfully, Preston Shields."

In response to this note the court sent back to the jury a note containing the following language:

"In reply to your inquiry I can give you no further instruction. Please carefully read the instructions in the charge heretofore given you."

Special Issue No. 3, the subject matter of the jury's note, was submitted to the jury in the following wording:

"Do you find from a preponderance of the evidence that on the occasion in question Clauzell Cox backed his vehicle when such movement could not be made with safety and without interfering with other traffic?"

Appellant takes the position that this issue is inquiring only about a voluntary "in gear" backing and did not inquire about any involuntary backward movement of the truck; and that the trial court erred in refusing to instruct the jury that it should not attribute to this issue an ambiguous meaning. In other words, Appellant says the trial court should have instructed the jury that the "backing" in the issue meant only a voluntary "in gear" backing. We do not agree.

The word "back" is a very common term, and the jury is supposed to use common sense and common interpretation of this language in arriving at their verdict. The word "back" or "backing" has a common interpretation and meaning and could mean either that the truck was driven back or rolled back.

■ As a matter of fact, there is no evidence in the record that Cox put the truck in gear and voluntarily backed the truck into the path of Mrs. Teer's car. On the contrary, the evidence showed that immediately prior to the accident, Cox had parked the truck on the shoulder of the highway and was sitting in the cab of his truck under the steering wheel with the engine running, with the truck in neutral (gear), which truck was parked on an incline which sloped downward toward the direction from which Mrs. Teer's car approached. Cox was sitting in the truck eating a sandwich at the time his truck was struck in the rear by Mrs. Teer's car. More will be said about the facts of the collision under other of Appellant's points; however, here it should be said that any movement of the truck immediately prior to the accident was shown by the evidence to be an involuntary rolling back as opposed to a voluntary "in gear" backing. We hold that the wording of this special issue inquired of an involuntary rolling back of the truck as well as an "in gear" backing, and that the trial court did not err in refusing to give further

instructions to the jury. Appellant's first point is overruled.

Appellant's points eight through twenty assert there is no evidence and insufficient evidence to support the jury's answers to the following special issues:

(1) To special issue Nos. 1 and 2, wherein it was found Clauzell Cox failed to keep a proper lookout, and proximate cause because of same.

(2) To special issues Nos. 3, 3(a), and 4, wherein the jury found that Clauzell Cox backed his truck when such movement could not be made with safety and without interfering with other traffic, that same was negligence, and a proximate cause of the collision.

(3) To special issue No. 20(d) wherein the jury found $15,000.00 as damages for loss of the value of Mrs. Teer's household services in the future, and in the alternative that said amount is excessive.

From our careful examination of the entire record we find ample evidence to support the jury's answers to all the above special issues, and hold that the evidence is legally and factually sufficient to support the jury's answers to the above issues.

The accident happened on or about February 5, 1974, shortly after 9 o'clock in the morning in the outskirts of the City of Mexia, Texas, on U.S. Highway 84.

Shortly before the accident, Clauzell Cox, travelling west on U.S. Highway 84, pulled the State Highway Department dump truck off the main paved portion of the highway and onto the righthand shoulder of the highway in front of Jackson Tractor Co. and stopped to wait for the arrival of other equipment. His engine was running, the truck was in neutral gear, and the truck was sitting on an incline which sloped downward in an easterly direction from the truck towards the direction from which Mrs. Teer's car approached. Cox was sitting in the cab of the truck, had gotten a sandwich out of his lunch box and was eating it, and he testified that at this time "something hit me from behind," thereby causing his truck to "go forward to the

right about five feet." What hit him was an Opel automobile driven by Mrs. Teer.

On this occasion Mrs. Teer with two small children in the car with her, was driving an Opel automobile west on U.S. Highway 84 about 35 to 40 miles per hour. She testified that this dump truck parked off the right-hand side of the main paved part of the highway, suddenly and unexpectedly backed out into the highway in front of her, causing the right front of her car to strike the left rear of the truck. Jimmy Porter, the ambulance driver who carried Mrs. Teer away from the scene to the hospital, testified that Mrs. Teer told him several times enroute that the truck backed out in front of her. This was corroborated by Mr. Teer, who was driving another automobile about four car lengths ahead of Mrs. Teer at the time of the accident. Mr. Teer testified that he noticed the dump truck parked on the right shoulder when he passed it going west, and that at the time his wife's car struck the truck, that the truck was out in the highway, so that he could see only about half of his wife's car because of the truck's blocking his view. Mr. Teer never did actually see the truck in backward motion, but merely testified to the truck's changed position between the time he passed the truck and the time of the collision. On the other hand, Clauzell Cox testified that the dump truck never did move from its parked position at any time prior to the impact. A Mr. Buck Day, an employee of Jackson Tractor & Equipment Co., was an eyewitness to the accident, and he testified that the dump truck did not move from its parked position before the impact.

The physical facts are supportive of the jury's findings that Cox failed to keep a proper lookout, and that same was a proximate cause of the collision. The truck being parked on the side of the main paved portion of the highway with the engine running, being in neutral, and sitting on an incline sloping downward so that if the truck should roll back, that it would roll into the highway in the probable path of oncoming vehicles, with Cox as driver thereof eating a sandwich, all point to and

are evidentiary of Cox's failure to keep a proper lookout, which failure was certainly a proximate cause of the accident. Moreover, there is ample evidence to support the jury's findings that Cox allowed the truck to roll backward into the main paved portion of the highway into the path of Mrs. Teer's automobile, that this was negligence, and a proximate cause of the collision.

■ With reference to the jury's answer of $15,000.00 for loss of the value of Mrs. Teer's household services in the future: We find the evidence to be legally and factually sufficient to support this amount of money, and we further find that this amount is not excessive. Dr. William E. Wagnon, an orthopedic surgeon who treated Mrs. Teer, testified that when Mrs. Teer was brought to him at the hospital in Waco, that she was in a serious condition, that she had depressed blood pressure, a fractured femur thigh bone (a compound fracture); that he called in Dr. Goldberg, a neurosurgeon, to see her, along with Dr. Baskin, another surgeon, to see her because he (Dr. Wagnon) thought she might have something wrong with her in her abdomen. He also had Dr. Lance, an oral surgeon, see her, and then they took her to the operating room and put about three pints of blood into her. Dr. Wagnon testified that he was afraid to operate on her even after giving her the blood because she was not doing too well. Then Dr. Baskin assisted by Dr. Wagnon opened up her abdomen, and they found Mrs. Teer had a lacerated spleen which was bleeding inside, and they removed the spleen. She also had a fractured jaw, and Dr. Lance operated on her jaw. Dr. Wagnon then performed surgery on her right leg, noting that she had a problem concerning her knee cap. She had to remain in traction in the hospital for two and a half to three months, during all of which time she was unable to turn over in bed. All told, she remained in Hillcrest Hospital in Waco, Texas, for three months, from February 5, 1974 until May 4, 1974.

Dr. Wagnon testified that Mrs. Teer had a serious limitation of motion in her right knee, that she would continue through life in relatively this same condition; that she was not able to bend, get down on the floor, and get up and down doing housework. At the time of the accident she was 26 years old and had a husband and three small children, seven, six and four years of age; that when she sits for a long period that she has difficulty walking when she gets up, because the leg tended to stiffen. Dr. Wagnon further testified that her condition was such that she would continue to endure pain in the future. Mr. Teer was required to clothe and bathe the children and wash their clothes and had to help his wife in mopping the floors and cleaning the house. Mrs. Teer had to sit in a chair to wash dishes. We find the evidence legally and factually sufficient to support the jury's answer of $15,000.00 for the value of the loss of Mrs. Teer's household services in the future, and that said amount is not excessive.

Appellant's points two through seven complain alleged acts of jury misconduct, including (1) the foreman visiting the scene of the accident during jury deliberations and allegedly reporting this back to the jury; (2) the jury foreman giving the jury a definition of the term "prudence"; (3) alleged remarks about the veracity of Mr. Buck Day, an eyewitness to the accident; (4) alleged discussion of attorney's fees; and (5) alleged discussion by the jurors concerning proper parking practices; and (6) the cumulative effect of all these alleged acts of misconduct.

■ Without detailing the evidence given by the jurors at the motion for mistrial and motion for new trial, we overrule all of Appellant's points of alleged jury misconduct. Basically, in each instance the evidence was conflicting, with there being some evidence that the alleged improper conduct occurred, other evidence wherein improper remarks were met by warnings that they should not be made, followed by no further mention thereof again, and still other evidence to the effect that the alleged improprieties were not even observed. The trial court overruled the motion for new trial, thereby impliedly finding that the al-

leged misconduct did not occur, and if it did occur, that it was not material and did not result in probable injury to Defendant-Appellant. We reach the same conclusions.

In order to grant a new trial for jury misconduct: (1) such misconduct must be proved; (2) such must be material; and (3) it must reasonably appear that probable injury resulted to the complaining party. Rule 327, Tex.Rules of Civil Procedure; *Crawford v. Detering Co.* (1951), 150 Tex. 140, 237 S.W.2d 615; *Mrs. Baird's Bread Co. v. Hearn* (1957), 157 Tex. 159, 300 S.W.2d 646; *Jordan v. New Amsterdam Casualty Co.* (CA 1961), Tex.Civ.App., 353 S.W.2d 256, reversed on other grounds, Tex., 359 S.W.2d 864. Here, Appellant has failed to meet the burden imposed upon it in order to become entitled to a reversal and new trial. See *Geo. C. Vaughan and Sons v. Dyess* (Texarkana CA 1959), Tex.Civ.App., 323 S.W.2d 261, writ dismissed.

We have carefully considered all of Appellant's points and contentions, and overrule same. Judgment of the trial court is affirmed.

AFFIRMED.